**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| **EDWARD LAMAR BLOODWORTH,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION NO. 5:13-CV-112 (MTT)** |
| ) | |
| **UNITED STATES OF AMERICA and** ) | |
| **JOHN and/or JANE DOES,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## ORDER

This matter is before the Court on the Parties' cross-motions for summary

judgment (Docs. 55, 62).  The Plaintiff failed both to respond to the Defendant's

statement of material facts and to attach a statement of material facts to his own motion.

Thus, the facts set forth by the Defendant in its statement of material facts (Doc. 63) are

admitted.  M.D. Ga. L.R. 56.  Indeed, although the Plaintiff is a prolific filer of pleadings,

he barely responded to the Defendant's motion for summary judgment.  Essentially, he

does nothing more than ask for his day in court.  The Plaintiff's deemed admissions of

fact and the absence of a substantive response to the Defendant's motion warrant

granting the motion. Nevertheless, the Court has reviewed the record to determine

whether summary judgment is appropriate and finds the facts undisputed, except where

noted below.  The Plaintiff's motion is **DENIED**, and the Defendant's motion is

**GRANTED**.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

This is a Federal Tort Claims Act ("FTCA") case stemming from Plaintiff Edward

Lamar Bloodworth's interactions with federal employees during his wife's, Dae Eek

Cho,[1] immigration case in 2011 and 2012.  On April 29, 2011, Bloodworth called the Immigration and Customs Enforcement ("ICE") duty desk and spoke with Immigration Enforcement Agent Gary Burcham.  (Doc. 63 at ¶ 2).  Bloodworth's first statement to Burcham was, "Is there anybody at Immigration that has any sense?"  (Doc. 62-4 at ¶ 5).  While Burcham attempted to answer Bloodworth's questions politely, Bloodworth continued to complain about the immigration system in a "belligerent and angry" tone before hanging up.  (Doc. 62-4 at ¶ 5).  Burcham informed his supervisor about the call, and Burcham's supervisor directed him not to answer any other calls from Bloodworth's number.  (Doc. 62-4 at ¶ 6).  Bloodworth called back 10 to 15 times that day and a few times the next day.  (Doc. 62-4 at ¶ 7).  Burcham did not answer any of those calls, and Bloodworth did not leave any messages.  (Doc. 62-4 at ¶ 7).

On May 11, 2011, Bloodworth went to the immigration courthouse in Atlanta to attend his wife's immigration hearing.  (Doc. 63 at ¶ 7).  Judge William Cassidy, who was presiding over Cho's case at the time, discussed Cho's immigration status with Bloodworth and Cho.  (Doc. 63 at ¶ 9).  Bloodworth requested that Cho's hearing be rescheduled to allow him time to retain counsel and that Cho be released on bond.  (Doc. 63 at ¶¶ 10-11).  Judge Cassidy denied the request to release Cho because she was ineligible to be released on bond due to her multiple convictions for shoplifting.  (Doc. 63 at ¶ 12).  Judge Cassidy also informed Bloodworth that Cho would need to file a 601 petition to request a waiver of those crimes if she wished to change her status from an illegal alien to a citizen on the basis of her marriage.  (Doc. 63 at ¶ 13).

---

[1] Cho is a Korean national who was mandatorily detained as an illegal alien with convictions for crimes involving moral turpitude.  Because she was facing deportation, she filed a Form I-601, Application for Waiver of Grounds of Inadmissibility, for waiver of the crimes so that she could adjust her status to a permanent resident based on hardship to Bloodworth as her United States citizen spouse.

Bloodworth and Cho were also instructed to bring all documents and evidence necessary to adjudicate the request for the waiver to the next hearing scheduled for May 25, 2011.  (Doc. 63 at ¶¶ 14-15).

On May 13, Burcham retrieved a voice message from Bloodworth to the ICE duty desk leaving his name and number and yelling, "Call me!"  (Doc. 62-4 at ¶ 9).  Following the directions of his supervisor, Burcham contacted the Federal Bureau of Investigation ("FBI"), and an FBI agent referred the matter to the Joint Terrorism Task Force.  (Doc. 62-4 at ¶ 10).  Subsequently, a Secret Service agent contacted Burcham and "advised that the interactions sounded like a case of general disgust with the government" rather than a direct threat.  (Doc. 62-4 at ¶ 10).

On May 25, the date of Cho's next hearing, Immigration Enforcement Agent Jamie Sollose-Taylor was assigned to escort detainees to and from court.  (Doc. 62-8 at ¶ 4).  Because Judge Cassidy's courtroom was overcrowded, Sollose-Taylor asked all family members, including Bloodworth, to wait in the hallway until their relative's case was called in accordance with courtroom procedures.  (Doc. 62-8 at ¶ 5).  Sollose-Taylor observed Bloodworth speaking loudly in the hallway, and she requested Bloodworth lower his voice because his loud talking was disruptive to the proceedings. (Doc. 62-8 at ¶¶ 6-7).  Bloodworth complied with Sollose-Taylor's request at that time. (Doc. 62-8 at ¶ 7).

Judge Cassidy did not reach Cho's case prior to the lunch break, and Sollose-Taylor and Immigration Enforcement Agent Anthony Settle began escorting detainees back to the detention cells for the lunch break.  (Doc. 62-8 at ¶ 8). Before Sollose-Taylor could escort Cho from the courtroom, Bloodworth entered and moved

aggressively towards Cho.  (Doc. 62-8 at ¶ 10).  Sollose-Taylor stepped in front of Bloodworth and began explaining that Cho's case would be heard after lunch, but Bloodworth pushed past Sollose-Taylor by using aggressive physical contact.  (Doc. 62-8 at ¶ 10).  Bloodworth began talking to Cho, and Sollose-Taylor asked Bloodworth to step outside into the hallway.  (Doc. 62-8 at ¶¶ 10-11).  Bloodworth refused, sat down on the bench, and said, "Why can't I sit here on the bench?"  (Doc. 62-8 at ¶ 11).  Sollose-Taylor again asked Bloodworth to step outside into the hallway, and Bloodworth complied.  (Doc. 62-8 at ¶ 12).  In the hallway, Sollose-Taylor warned Bloodworth that his behavior was interfering with court proceedings and that his aggressive manner toward her violated courtroom procedure.  (Doc. 62-8 at ¶ 13).  Sollose-Taylor also explained to Bloodworth that detainees were not allowed to have any contact or communication with family members.  (Doc. 62-8 at ¶ 14).

Despite the pre-lunch incident, Bloodworth attempted to hand Cho a piece of paper as she was being escorted back to the courtroom after lunch.[2]  (Doc. 62-8 at ¶¶ 15-16).  Sollose-Taylor asked building security to escort Bloodworth out of the building.  (Doc. 62-8 at ¶ 16).  Before he could be physically removed, however, Bloodworth quickly made his way to the lobby and out of the building.[3]  (Doc. 62-8 at ¶ 17).  After Bloodworth left the building, Sollose-Taylor informed Federal Protective Service ("FPS") agents of her interactions with Bloodworth.  (Doc. 62-8 at ¶ 18).

---

[2] Although Bloodworth did not admit to attempting to hand Cho a piece of paper, Bloodworth did admit that he spoke with Cho as she was being escorted back to the courtroom.  (Doc. 65-1 at 29:11-18).

[3] Bloodworth testified that Settle forcibly took him to the lobby as Bloodworth was attempting to reenter the courtroom.  (Doc. 65-1 at 23:12-18).

Subsequent to those events, Cho's case was called, and Judge Cassidy informed Cho of the events leading up to Bloodworth's departure.  (Doc. 63 at ¶ 47).  Because Bloodworth was no longer present, Judge Cassidy set another hearing date of June 8, 2011 for Cho to present evidence in support of her 601 petition.  (Doc. 63 at ¶ 48).

The next day, May 26, ICE Assistant Field Office Director Jarvis McMillar directed an ICE officer to create a "Be on the Lookout" ("BOLO") alert for Bloodworth. (Doc. 63 at ¶ 49).   McMillar made this direction based on the statements made by Bloodworth during his calls to the ICE duty desk and Bloodworth's disruptive behavior the previous day.  (Doc. 62-11 at ¶¶ 4(1)-4(2)).  The purpose of the BOLO was for officer awareness and safety and to notify any agents or court personnel who encountered Bloodworth in or around the building to report it immediately to FPS and the Homeland Security Investigations duty agent.  (Docs. 62-10; 62-11 at ¶ 4(2)).

On June 8, attorney Joseph Azar appeared on behalf of Cho and requested a continuance because he was not prepared to move forward with her 601 petition.  (Doc. 63 at ¶ 53).  Judge Cassidy rescheduled the hearing for June 29, 2011, and Azar asked Judge Cassidy whether Bloodworth would be allowed to attend that hearing.[4]  (Doc. 63 at ¶¶ 54-55).   Judge Cassidy instructed Azar to file the 601 petition and make a formal request to FPS to allow Bloodworth to attend, and Azar stated that he understood. (Doc. 63 at ¶¶ 56-57).

---

[4] Apparently, Bloodworth was asked to leave the building on June 8, 2011 as well.  (Doc. 62-11 at ¶ 4(3)). Bloodworth testified that, although he was removed from the building on this date, he was not touched or physically assaulted.  (Doc. 65-1 at 43:13-44:2).

However, on June 29, Azar requested another continuance because he was unprepared again.[5]  (Doc. 63 at ¶ 58).  Judge Madeline Garcia, who was presiding on that date, admonished Azar for his lack of preparedness given that his client was detained.  (Doc. 63 at ¶¶ 59-60).  Nevertheless, Judge Garcia gave Azar an additional week to make the necessary filings and present the 601 petition.  (Doc. 63 at ¶ 61).

On July 7, 2011, Azar appeared on behalf of Cho with Judge Cassidy presiding.  (Doc. 63 at ¶ 63).  Bloodworth was denied access to the immigration court.  (Doc. 65-1 at 48:19-49:3).  Azar again requested additional time, and a new hearing date was set for September 14, 2011.  (Doc. 63 at ¶¶ 64-65).  Subsequently, Bloodworth and Cho fired Azar and retained new counsel.  (Doc. 65 at 49:21-50:13).

On September 14, 2011, attorney Christopher Palazzola appeared on behalf of Cho.  (Doc. 63 at ¶ 67).  Palazzola was prepared to make several filings on that date, but Judge Cassidy informed him that any filings should have been made at least 15 days prior to the hearing.  (Doc. 63 at ¶ 69).  Apparently, Bloodworth did not inform Palazzola that he had previously been denied access to the immigration court, and Bloodworth was again detained by agents in a security area.  (Doc. 65 at 30:1-25).  Judge Cassidy determined Cho's newly retained counsel did not have a strong understanding of the case and rescheduled the hearing date to October 28, 2011 but warned there would be no future continuances.  (Doc. 66 at 47:23-49:6).  Judge Cassidy also noted that FPS had denied Bloodworth's request to enter the building on that date but stated that the court would make "other means available, either telephone, affidavit, or the like, to ensure that safeguards are in place that we can have a full and

---

[5] Bloodworth testified that he was denied entry to the building on June 29, 2011.  (Doc. 65-1 at 48:8-18).

complete hearing." (Doc. 66 at 48:6-10; 49:7-9). Subsequently, Bloodworth and Cho fired Palazzola. (Doc. 65 at 31:23-24).

On October 28, 2011, Cho appeared for her rescheduled hearing without counsel. (Doc. 63 at ¶ 74). Bloodworth did not come to the court for this hearing because he mistakenly believed the hearing was set for the previous day, although he testified that he was denied access on October 27.[6] (Doc. 65-1 at 51:16-52:18). Judge Cassidy noted that Cho was in a "difficult situation" because Bloodworth was "a necessary party to [her] case[,]" but FPS would not allow Bloodworth to enter the building. (Doc. 66 at 51:18-23). Judge Cassidy stated that he wanted to "make arrangements for [Bloodworth] to testify, albeit telephonic[ally]," and Judge Cassidy gave Cho another continuance so that she could find representation. (Doc. 66 at 51:23-52:1). Judge Cassidy again provided Cho with a list of attorneys who could represent her and suggested she find an attorney to help her. (Doc. 66 at 52:6-53:15). After Judge Cassidy's numerous attempts to explain to her that he did not have the authority to order FPS to admit Bloodworth into the building nor did he have the authority to release her from detention due to her criminal record, Cho accused Judge Cassidy of scaring away her attorneys. (Doc. 66 at 53:16-64:9).

Cho's next hearing was held on December 8, 2011, and attorney Bonnie Youn made an appearance on behalf of Cho. (Doc. 63 at ¶ 78). Bloodworth was also present for that hearing.[7] (Docs. 63 at ¶ 79; 65-1 at 54:2-7). Youn presented the 601 waiver

---

[6] Despite his testimony, Bloodworth still asserts he was denied access to the immigration court on October 28, 2011. (Docs. 55 at 2; 67 at 2).

[7] Again, despite his testimony to the contrary, Bloodworth asserts in his motion for summary judgment and response to the Government's motion that he was denied access to the immigration court on December 8, 2011. (Docs. 55 at 2; 67 at 2).

petition, including exhibits, to which the parties made objections on the record.  (Doc. 63 at ¶¶ 80-82).  Youn presented an expert report from a psychologist, but the government objected because the expert was not available to testify or be cross-examined.  (Doc. 63 at ¶ 83).  Youn conferred with Cho and Bloodworth to determine if they wanted a continuance to obtain the expert's testimony, and Judge Cassidy allowed the expert to testify by phone to alleviate the financial costs of requiring him to testify in person. (Doc. 63 at ¶¶ 84-85).  Youn also requested the court issue a subpoena to obtain Cho's medical records from the detention facility, and Judge Cassidy agreed to do so.  (Doc. 63 at ¶¶ 87-88).  Judge Cassidy asked Youn to let him know when she wanted to reschedule the hearing after consulting with the expert witness and obtaining records. (Doc. 63 at ¶ 83).  On January 26, 2012, Youn filed a motion to withdraw as Cho's counsel, citing Cho's financial constraints and Cho's wishes to no longer be represented by Youn as the reasons for withdrawal.[8]  (Doc. 62-13).

On February 14, 2012 at 9:00 a.m., Cho appeared at her rescheduled hearing without counsel or Bloodworth.  (Doc. 63 at ¶¶ 91-92).  Judge Dan Pelletier presided over the hearing.[9]  (Doc. 63 at ¶ 91).  Cho explained to Judge Pelletier that she had filed a motion to dismiss.  (Doc. 66 at 94:18-23).  After Judge Pelletier informed Cho that her motion would be denied, she requested they hold off on proceeding until Bloodworth arrived for her hearing.  (Doc. 66 at 96:15-97:7).  Judge Pelletier resumed the hearing at 1:00 p.m., but Bloodworth had still not arrived.  (Doc. 66 at 97:10-20).  Judge Pelletier

---

[8] Cho stated at her next hearing that she and her husband fired Youn.  (Doc. 66 at 91:2-8).  Bloodworth, however, testified that Youn was not fired but, instead, was retained only for the purpose of attending the December 8, 2011 hearing.  (Doc. 65 at 75:11-76:3).

[9] Judge Pelletier was assigned to Cho's case after Judge Cassidy recused himself.  (Doc. 66 at 89:24-91:1).

rescheduled Cho's hearing for February 21, 2012 and told Cho she needed to inform Bloodworth, as Cho's petitioner, it was very important that he be present for her hearing. (Doc. 66 at 104:7-17).

On February 21, Cho appeared without counsel, but Bloodworth was present. (Doc. 63 at ¶ 94).  At the hearing, both parties presented evidence, including testimony from Bloodworth and Cho.[10]  (Doc. 63 at ¶ 95).  At the conclusion of the hearing, Judge Pelletier granted Cho's application for adjustment of status to a lawful permanent resident.  (Doc. 63 at ¶ 96).

On September 12, 2012, Bloodworth filed an administrative claim with FPS for $250,000 in damages resulting from alleged violations of his constitutional rights.[11] (Docs. 1-1 at 3; 62-3).  Because the agency did not make a final disposition of Bloodworth's claim within six months of the filing date, Bloodworth filed a new complaint with the Court on March 28, 2013 pursuant to 28 U.S.C. § 2675(a).[12]  (Doc. 1). Bloodworth has attempted to amend his complaint twice, but both motions were denied.[13]  (Docs. 18, 47-50, 59).  The Government now seeks summary judgment on all claims alleged in Bloodworth's complaint.[14]

---

[10] During Cho's testimony, Judge Pelletier had to invoke the rule of sequestration and remove Bloodworth from the courtroom because he interrupted the proceedings multiple times.  (Doc. 66 at 134:5-24).

[11] Bloodworth initially filed a complaint with this Court on January 17, 2012, but the Court dismissed his complaint for failure to exhaust his administrative remedies.  *Bloodworth v. U.S. Dep't of Justice*, 5:12-cv-20 (M.D. Ga. August 10, 2012) (Doc. 28).

[12] The Department of Homeland Security eventually denied the claim on April 8, 2013.  (Doc. 62-14).

[13] In his recently filed document entitled, "Case Background and Plaintiff's Litigation Observations," Bloodworth accused the Court of "stat[ing] in its own Order that some type of communications between the Court and the [Government] took place that [Bloodworth] was not included in and was not informed of until those communications had already occurred previous to December 20, 2013."  (Doc. 68 at ¶ 12). The Court did not make this statement in its Order nor did any improper ex parte communications take place between the Court and the Government.  Rather, all statements by the Government referenced in

## II.  DISCUSSION

### A.  Summary Judgment Standard

Summary judgment must be granted if the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine dispute as

to any material facts and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).  "A factual dispute is genuine only if 'a reasonable jury could

return a verdict for the nonmoving party.'"  *Info. Sys. & Networks Corp. v. City of Atlanta*,

281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real*

*Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)).  The burden rests with the moving party to

prove that no genuine issue of material fact exists.  *Info. Sys. & Networks Corp.*, 281

F.3d at 1224.  The party may support its assertion that a fact is undisputed by "citing to

---

the Court's Order (Doc. 47) regarding Bloodworth's motion to amend his complaint were taken from the Government's discovery status report (Doc. 40 at 7), which was filed on the docket, or the status conference held on December 20, 2013, which Bloodworth attended (Doc. 46).

[14] Also in his "observations," Bloodworth states that "[t]he United States Attorney has visited the Court's law clerk on several occasions and has made several phone calls to the Court or law clerk seeking advice on tactical strategy for her case management and has received instructions from the [C]ourt on how and when to file motions in this case or even if she should file a motion at all."  (Doc. 68 at ¶ 13).  The Assistant United States Attorney has never visited any of the Court's law clerks nor has she spoken with any of the Court's law clerks on the phone.  The Assistant United States Attorney has always appropriately contacted the Court's courtroom deputy, in accordance with ordinary Court procedures, regarding the appropriate time for responding to Bloodworth's motions or whether a response from her was required.  The Court does not discuss "tactical strategy" with counsel or pro se litigants under any circumstances.

Further, Bloodworth inexplicably states in his "observations" that he did not receive "a single item of discovery from the [United States] Attorney in [his] case."  (Doc. 68 at ¶ 15).  During Bloodworth's deposition, however, the Assistant United States Attorney reviewed their correspondence and the information exchanged during the discovery process.  (Doc. 65-1).  For example, the Assistant United States Attorney asked, "Let me show you my Defense Exhibit 15, United States' responses to plaintiff's discovery.  Do you recall receiving that?"  (Doc. 65-1 at 8:15-17).  Bloodworth responded, "Yes, I remember this one well.  I remember this one well."  (Doc. 65-1 at 8:18-19).  Any discovery disputes  in this case were addressed at the status conference held on December 20, 2013 (Doc. 46) and in this Court's Order following the conference (Doc. 47).  Neither Party filed any motion or status update with the Court regarding further discovery issues after that Order was entered.

particular parts of materials in the record, including depositions, documents,

electronically stored information, affidavits or declarations, stipulations (including those

made for purposes of the motion only), admissions, interrogatory answers, or other

materials." Fed. R. Civ. P. 56(c)(1)(A).

"If the moving party bears the burden of proof at trial, the moving party must

establish all essential elements of the claim or defense in order to obtain summary

judgment." *Anthony v. Anthony*, 642 F. Supp. 2d 1366, 1371 (S.D. Fla. 2009) (citing

*Four Parcels of Real Prop.*, 941 F.2d at 1438).  The moving party must carry its burden

by presenting "credible evidence" affirmatively showing that, "on all the essential

elements of its case on which it bears the burden of proof at trial, no reasonable jury

could find for the nonmoving party." *Four Parcels of Real Prop.*, 941 F.2d at 1438.  In

other words, the moving party's evidence must be so credible that, if not controverted at

trial, the party would be entitled to a directed verdict. *Id.*

"If the moving party makes such an affirmative showing, it is entitled to summary

judgment unless the nonmoving party, in response, 'come[s] forward with significant,

probative evidence demonstrating the existence of a triable issue of fact.'" *Id.* (quoting

*Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991))

(alteration in original).  However, "credibility determinations, the weighing of the

evidence, and the drawing of legitimate inferences from the facts are jury functions, not

those of a judge. ... The evidence of the non-movant is to be believed, and all justifiable

inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

255 (1986).  Thus, the Court "'can only grant summary judgment if everything in the

record demonstrates that no genuine issue of material fact exists.'" *Strickland v. Norfolk*

*S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012) (quoting *Tippens v. Celotex Corp.*, 805 F.2d 940, 952 (11th Cir. 1986)).

In contrast, "[w]hen the *nonmoving* party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material *negating* the opponent's claim.'"  *Four Parcels of Real Prop.*, 941 F.2d at 1437 (quoting *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986)).  The moving party "simply may show … that there is an absence of evidence to support the nonmoving party's case." *Id.* at 1438 (internal quotation marks and citation omitted).  "Assuming the moving party has met its burden, the non-movant must then show a genuine dispute regarding any issue for which it will bear the burden of proof at trial."  *Info. Sys. & Networks Corp.*, 281 F.3d at 1224-25 (citing *Celotex Corp.*, 477 U.S. at 324).

The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion.  *See Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005).  "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed."  *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (internal quotation marks and citation omitted).  The Court will consider each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration.  *See Am. Bankers Ins. Grp.*, 408 F.3d at 1331.

**B.     Claims Pursuant to the Federal Tort Claims Act**

In his Form 95, the only claim Bloodworth arguably raised was a denial of access to the immigration court.  Thus, the Government contends the claims Bloodworth raises

-12-

in his complaint for assault, battery, false imprisonment, invasion of privacy, and intentional or negligent infliction of emotional distress must be dismissed.  With regard to Bloodworth's claim that he was denied access to court, the Government contends, as discussed below, that this constitutional claim is not cognizable under the FTCA.  Even if that claim could be raised pursuant to the FTCA, the undisputed facts show Bloodworth was not improperly denied access to court.

The FTCA provides a limited waiver of the United States' sovereign immunity "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment."  28 U.S.C. § 1346(b)(1).  The FTCA permits claims against the United States "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  *Id.*

A FTCA action may not be brought in court "unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing [or the agency fails to make a final disposition of the claim within six months from the date the claim is filed.]"  28 U.S.C. § 2675(a).  "The FTCA requires that *each* claim and *each* claimant meet the prerequisites for maintaining a suit against the government."  *Dalrymple v. United States*, 460 F.3d 1318, 1325 (11th Cir. 2006) (citing 28 U.S.C. § 2675(a)).  Filing a proper administrative claim is a "jurisdictional requirement."  *Id.* at 1324.  In enacting 28 U.S.C. § 2675(a), Congress intended the administrative claim requirement to give agencies the opportunity to settle suits prior to litigation, which "would 'ease court congestion and avoid unnecessary

-13-

litigation, while making it possible for the Government to expedite the fair settlement of tort claims asserted against the United States.'" *Burchfield v. United States*, 168 F.3d 1252, 1255 (11th Cir. 1999) (citation omitted).

While Bloodworth filed an administrative claim with the appropriate federal agency, he did not present all of the claims he asserts in this Court in his administrative claim or in the attachments submitted with his claim.  (Doc. 71).  Rather than presenting the facts relevant to his claims, Bloodworth stated, "[T]he Form 95 does not allow for a detailed presentation of this claim."  (Doc. 71 at 3).  Bloodworth did identify six occasions during 2011 (May 25, June 8, June 29, July 7, September 14, and October 28) when he was denied access to the immigration court.  (Doc. 71 at 4).  However, under the "Personal Injury / Wrongful Death" portion of the form directing the claimant to "[s]tate the nature and extent of each injury … which forms the basis of the claim[,]" Bloodworth wrote "not applicable" and "damages for violations of law."  (Doc. 71 at 5).  Nor did Bloodworth identify an amount of damages related to personal injury.  (Doc. 71 at 5).

In his response to the Government's motion, he does not contest the Government's argument that his claims are jurisdictionally barred because he did not file an appropriate Form 95.  Nor does Bloodworth argue that his administrative claim sufficiently encompasses his FTCA claims.  It is not enough that Bloodworth simply filed a form.  To satisfy 28 U.S.C. § 2675(a), a claimant must do two things: (1) provide the appropriate agency with written notice of his claim sufficient to enable the agency to investigate and (2) give the agency a sum certain value of the claim.  *Id.* (citation omitted).  The claimant is not required to provide the agency with every possible theory

of recovery or every relevant factual detail, but the agency cannot be expected "to undertake an independent search for injuries or theories of liability that are not closely related to the matters described in the claim." *Id.* at 1255-56 (citations omitted). Further, "a claim may be so vague or lacking in detail that the agency cannot be expected to initiate any investigation at all." *Id.* at 1257 (citations omitted).

While Bloodworth met the second requirement by identifying a sum certain in his administrative claim, his claim was so vague and lacking in detail that the agency could not have been reasonably expected to search for injuries and theories of liability that were in no way identified in his claim. Bloodworth's claim states only that his constitutional rights were violated when he was denied access to the immigration court on six occasions. There are no facts to suggest any other tortious or negligent conduct occurred in conjunction with the denials to attend court.

Even if Bloodworth had complied with 28 U.S.C. § 2675(a), the Government argues that Bloodworth has not shown any employee acting within the scope of his or her employment committed any of the intentional or negligent acts alleged. The Court agrees. Bloodworth has not produced any evidence to demonstrate a factual dispute exists regarding his alleged FTCA claims. The evidence produced by the Government shows Bloodworth violated multiple immigration court procedures, was warned about his behavior several times, and left the building before he could be forcibly removed on May 25, 2011. Bloodworth has not presented any evidence that he was assaulted, falsely imprisoned, intentionally or negligently subjected to emotional distress, or that his privacy was invaded. Accordingly, the Government is entitled to summary judgment on Bloodworth's FTCA claims.

### C.    Claims for Constitutional Violations

Bloodworth has also brought constitutional tort claims pursuant to the Fourth Amendment for alleged unreasonable searches and detentions and the Fifth Amendment for alleged violations of his rights to equal protection and due process.[15] But the FTCA does not waive the United States' immunity for constitutional violations.[16] *See F.D.I.C. v. Meyer*, 510 U.S. 471, 477-78 (1994) ("Applying these principles to this case, we conclude that Meyer's constitutional tort claim is not 'cognizable' under § 1346(b) because it is not actionable under § 1346(b)—that is, § 1346(b) does not provide a cause of action for such a claim.").

Even if Bloodworth's constitutional violation claims were properly before the Court, Bloodworth has failed to establish the elements of his claims or show a genuine issue of material fact exists.  It is undisputed that Bloodworth was not allowed into the immigration court on multiple occasions.[17]  However, there is undisputed evidence in the record showing the agents responsible for preventing Bloodworth from entering the building had legitimate reasons to do so, including Bloodworth's disruptive behavior and failure to follow court procedures.

---

[15] Bloodworth calls the next to last paragraph of his complaint his "Third Cause of Action."  (Doc. 1 at 5). However, that paragraph sets forth only facts and opinions rather than any cognizable legal claims and, therefore, does not merit discussion.

[16] Although plaintiffs may pursue *Bivens* claims against federal employees for constitutional violations, there are no individual defendants in this case because Bloodworth never successfully amended his complaint to join any individual defendants.

[17] Bloodworth seems to argue at various points in the record that the filing of his first federal lawsuit on January 17, 2012 is what finally allowed him to gain access to the immigration court.  (*See, e.g.*, Doc. 65-1 at 59:9-24).  However, Bloodworth does not attempt to reconcile his argument with the fact that he was allowed to attend Cho's hearing on December 8, 2011.

Further, Bloodworth has not shown he had an unequivocal right to be present for his wife's immigration proceedings.  There is no doubt that the United States citizen spouse, or other qualifying relative, of an illegal alien who is applying for a waiver while in removal proceedings is a vital witness.[18]  Judges Cassidy and Pelletier expressed the importance of Bloodworth's presence for the 601 hearings, and the transcript of Cho's immigration proceedings clearly shows Judge Cassidy attempted to instruct Cho's various attorneys what steps to take to ensure Bloodworth was present or could at least testify through some means.  However, Bloodworth has cited no authority showing he had an unqualified right to be present at the hearing in light of his disruptive actions.

With regard to Bloodworth's equal protection claim, he has not adduced any evidence, or even pled any allegations, regarding discrimination on the basis of any protected characteristic.  Nor has Bloodworth produced any evidence that he was unlawfully searched and detained.  Accordingly, the Government is entitled to summary judgment on Bloodworth's claims for violations of his constitutional rights.

### III.  CONCLUSION

For the foregoing reasons, Bloodworth's motion for summary judgment is **DENIED**, and the Government's motion for summary judgment is **GRANTED**.[19]

---

[18] Bloodworth submitted declarations from two of his wife's former attorneys to this effect.  (Docs. 55-1; 55-2).

[19] On May 6, the day before the entry of this Order, Bloodworth filed a "Motion for Hearing on Current Matters."  (Doc. 73).  The Court cannot tell exactly why Bloodworth wants a hearing, but it is possible to read his motion to raise a question as to the authenticity of the copy of his administrative claim tendered by the Government.  The Government's statement of undisputed facts contains detailed allegations about Bloodworth's administrative claim.  (Doc. 63 at ¶¶ 97-103).  These allegations incorporate Exhibit A to the Government's motion for summary judgment.  (Doc. 62-3).  Exhibit A is a copy of Bloodworth's Form 95. As noted, Bloodworth failed to respond to the Government's statement of undisputed facts and thus those facts are admitted.  In addition, the Government filed separately, along with an affidavit of authenticity, a copy of Bloodworth's administrative claim.  (Doc. 71).  Accordingly, to the extent Bloodworth's motion for

**SO ORDERED,** this the 7th day of May, 2014.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT

---

a hearing attempts to contest the authenticity of the administrative claim he filed, it is without merit.
Certainly there is no reason for a hearing.  Bloodworth's motion for a hearing is **DENIED**.